UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

HARTFORD LIFE INSURANCE COMPANY,      :

         Plaintiff,      :

  -against-      :

BANK OF AMERICA CORP., et al.,      :

        Defendants.      :

----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-21-07

06 Civ. 3805 (LAK) (HBP)

OPINION
AND ORDER

      PITMAN, United States Magistrate Judge:

## I.   Introduction

      Defendants Bank of America Corp, Bank of America, N.A.,
and Banc of America Securities LLC (collectively "BOA," or
"defendants") move for an Order declaring that a document they
have already produced entitled "Overview of the Due Diligence
Process in Capital Markets Transactions," Bates numbered BOFA-
1843869 through BOFA-1843916 and BOFA-2036748 through BOFA-
2036795 (the "Document") is protected by the attorney-client
privilege.[1]  Defendants further move to compel plaintiff Hartford
Life Insurance Company ("Hartford" or "plaintiff") to destroy all
copies of the Document in its possession, cease making use of the

_____

[1]Defendants have requested an informal conference before the
Court in accordance with Local Rule 37.2.  Because I do not
believe such a conference is necessary in this instance, I
decline this request and proceed directly to the merits of
defendants' motion.

Document, and withdraw a report from its expert which makes reference to the Document.  For the reasons set forth below, BOA's motion is denied.

II.  Facts

    A.  Background

        This case is part of a multi-district securities fraud litigation.  In re Parmalat Securities Litigation, 04-MD-1653 (LAK).  The parties have entered into a stipulated protective order (the "Protective Order") which prohibits the parties from making use of any document inadvertently produced in discovery that a "reasonable attorney" would recognize as privileged (Stipulated Protective Order, dated August 3, 2005 ("Protective Order") at 3-4, annexed as Exhibit I to Declaration of John H. Cobb, Esq., dated June 25, 2007 ("Cobb Decl.")).[2]  Similarly, the Protective Order requires the parties to cease making use of and return any privileged document immediately upon receiving notice of the privileged document's inadvertent production (Protective Order at 3-4, annexed as Exhibit I to Cobb Decl.).

---

[2]Hartford was added to the Protective Order on August 4, 2006 (Order Adding Hartford Life Insurance Company to Stipulated Protective Order, dated August 4, 2006, annexed as Exhibit A to Letter from Michael P. Bowen, Esq., dated July 5, 2007 ("Bowen Letter")).

On August 22, 2006, BOA sent a letter to all parties to the In re Parmalat Securities Litigation advising that the Document had been inadvertently produced at an unspecified point in time and asserting that the Document is protected by the attorney-client privilege (Letter from Robert D. Keeling, dated August 22, 2006, annexed as Exhibit A to Cobb Decl.).  BOA identified the document by Bates numbers BOFA-1843869 through BOFA-1843916 (Letter from Robert D. Keeling, dated August 22, 2006, annexed as Exhibit A to Cobb Decl.).

Notwithstanding its August 22, 2006 letter, BOA then produced the Document to Hartford, on September 11, 2006, bearing Bates numbers BOFA-1843869 through BOFA-1843916, as part of a voluminous document production.

BOA also produced the Document to all parties to the In re Parmalat Securities Litigation on a third, unspecified, occasion, this time bearing Bates numbers BOFA-2036748 through BOFA-2036795.

An unidentified party to the In re Parmalat Securities Litigation posted the version of the Document numbered BOFA-2036748 through BOFA-2036795 to the In re Parmalat Securities Litigation FTP website -- which is accessible to all parties, defendants and plaintiffs alike -- in connection with a deposition scheduled for February of 2007.  Hartford neither noticed, nor attended, nor had any other involvement with that deposition.

3

On February 12, 2007, BOA sent an e-mail to all parties in the In re Parmalat Securities Litigation, including Hartford, with a subject line stating:  "In re Parmalat: Privileged Bank of America Document" (E-Mail from Brian Vann, dated February 12, 2007, annexed as Exhibit B to Letter from Michael P. Bowen, Esq., dated July 5, 2007 ("Bowen Letter")).  The body of the email requested that counsel "[p]lease see the attached correspondence regarding a privileged Bank of America document posted for Wednesday's 30(b)(6) deposition" (E-Mail from Brian Vann, dated February 12, 2007, annexed as Exhibit B to Bowen Letter). Attached to the e-mail was a letter from BOA's counsel stating:

> I write regarding a privileged Bank of America document that has been posted by [counsel for one of the parties to the In re Parmalat Securities Litigation] as a potential exhibit for the upcoming 30(b)(6) deposition . . . .  The document bearing Bates stamp BOFA-2036748 through BOFA-2036795 is privileged and was inadvertently produced.  I note that this document is identical to BOFA-1843869 through BOFA-1843916, which has been identified to you as privileged on at least two prior occasions.  On each of those occasions, we asked you to remove this document from your database and refrain from posting or using the document at future depositions.  Pursuant to the Protective Order, we ask that you take the same action with respect to BOFA-2036748 through BOFA-2036795.

(Letter from Brian Vann, dated February 12, 2007, annexed as Exhibit B to Bowen Letter).

Hartford took no immediate action in response to BOA's February 12, 2007 e-mail and letter.  At an unspecified time after receiving notice of BOA's privilege claim, Hartford pro-

vided a copy of the Document to its expert witness, Roberts W. Brokaw, III, who cited and discussed the Document in a report submitted on June 4, 2007 (the "Brokaw Report") (Expert Report of Roberts W. Brokaw III, dated June 4, 2007 at 20, 39-43, 48-49, annexed as Exhibit C to Cobb Decl.).  On June 5, 2007, immediately after receiving the Brokaw Report, BOA reasserted its privilege claim and demanded that Hartford retract the Brokaw Report (Letter from John H. Cobb, dated June 5, 2007, annexed as Exhibit C to Bowen Letter).  Hartford rejected BOA's privilege claim, but agreed to redact the Brokaw Report pending resolution of the privilege issue (Letters from Michael Bowen, dated June 7 and June 14, 2007, annexed as Exhibits E and G, respectively, to Cobb Decl.; E-mail from Kalitimara Moody, dated June 18, 2007, and attached redacted Brokaw Report, annexed as Exhibit I to Cobb Decl.).

Hartford has admitted to receiving BOA's February 12, 2007 privilege notification (Bowen Letter at 4 n.1).  Notwithstanding this admission, however, Hartford claims that it was unaware of BOA's privilege claim until it received BOA's June 5, 2007 objection to the Brokaw Report because it "simply over-looked" the February 12, 2007 notification (Bowen Letter at 4 n.1).

B.   The Document

       The Document consists of a 48 page slide show presenta-
tion which was appended to a larger, corporate due diligence
manual entitled "Banc of America Securities, Debt Capital Mar-
kets, Due Diligence Policy and Procedures (March 1, 2002, Banc of
America Securities)" (In Camera Addendum at BOFA-1843764).   The
Document was prepared by the BOA legal department and the law
firm of Davis Polk & Wardwell (Declaration of Isaac Osaki, dated
June 25, 2007 ("Osaki Decl.") ¶ 2).   The cover of the Document
lists BOA and Davis Polk & Wardwell as authors, and each page of
the Document contains the logos of BOA and Davis Polk & Wardwell
(The Document at 1, passim).   The Document was presented as part
of a mandatory, internal training program to BOA's investment
banking and capital markets professionals and in-house counsel
(Osaki Decl. ¶ 4).   BOA asserts that all attendees of the train-
ing session were either in-house counsel, attorneys from Davis
Polk & Wardwell, or employees of BOA whose responsibilities
included conducting due diligence in connection with securities
offerings (Osaki Decl. ¶ 5).   BOA further asserts that, pursuant
to its corporate policies, all attendees were expected to treat
the Document as a confidential, internal document (Osaki Decl. ¶
6); the document, however, bears no legend or other markings
indicating that it is privileged or confidential and there is no
evidence in the record that this expectation of confidentiality

was ever communicated to the attendees of the training program
(The Document _passim_).  The Document expressly states its purpose
as:  "This presentation is intended to provide you with general
guidelines to help you design the appropriate due diligence plan"
(The Document at 5).  The Document, _inter alia_, provides over-
views of certain federal securities laws, describes circumstances
in which liability may be imposed, and highlights and explains in
general terms the due diligence defense (The Document at 6-16).
It also describes the nature of securities litigation and judi-
cial decisions on the issue of due diligence, and loosely out-
lines certain BOA due diligence policies (The Document at 17-48).
The Document does not contain any information concerning any
specific past, pending or future transaction.

    C.   The Parties' Arguments

      In support of its motion, BOA argues that the Document
is protected by the attorney-client privilege and would be
recognized as such by any reasonable attorney because (1) each of
its pages contains the logo of the bank's attorney's; (2) it was
prepared by external and in-house counsel for the purpose of
providing legal advice to certain employees responsible for due
diligence in securities offerings; (3) the employees to whom the
Document was presented were expected to treat the document as
confidential, and (4) it was intended to and does convey legal

advice concerning compliance with securities law (Letter from John H. Cobb, Esq., dated June 25, 2007 at 2-5).

Hartford argues that (1) BOA disregarded its own claim of privilege by producing the Document on multiple occasions and providing it to Hartford after it had asserted that it was privileged; (2) the contents of the Document are not confidential and do not constitute legal advice; (3) BOA failed to "jealously guard" any possible claim to privilege, and (4) BOA has put the material in the Document at issue, since it is an integral part of a manual that describes BOA's due diligence practices, which BOA has raised as a defense against Hartford's claims (Letter from Michael P. Bowen, dated July 5, 2007 at 2).

BOA argues in reply that it has established a prima facie case that the Document is privileged because it has shown that the Document (1) was expected to be treated by its recipients as confidential; (2) was a communication between its legal counsel and a group of investment banking and capital markets professionals, and (3) was intended to, and did in fact, convey legal advice (Letter from John H. Cobb, dated July 16, 2007 at 2-3). BOA argues that, having established a prima facie case of privilege, the burden shifts to Hartford to prove that BOA has waived the privilege, and that Hartford has not satisfied this burden (Letter from John H. Cobb, dated July 16, 2007 at 2-3). BOA also argues that it has not failed to "jealously protect" its

8

claim of privilege because it followed the same steps in this matter as it did in connection with a prior motion concerning different inadvertently produced documents which the Court found adequate (Letter from John H. Cobb, dated July 16, 2007 at 3-4).

With respect to Hartford's at issue argument, BOA asserts that it has not waived the protection of the attorney client privilege by putting the Document at issue in this litigation because it has never affirmatively relied on the document to establish a due diligence defense, nor has it ever deliberately revealed the substantive information in the Document (Letter from John H. Cobb, Esq., dated June 25, 2007 at 3-4; Letter from John H. Cobb, dated July 16, 2007 at 4).

III.  Analysis

    A.  Attorney-Client Privilege

        1.  Choice of Law

The complaint asserts federal claims based on the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10-b-5 promulgated thereunder, 15 U.S.C. § 78i(b); 17 C.F.R. § 240.10b-5, the Connecticut Uniform Securities Act, Conn. Gen. Stat. §§ 36b-4(a), 36b-4(b), 36b-29(2), as well as common law claims of negligent misrepresentation and fraud; the court's subject matter jurisdiction to hear the non-federal claims is

based on diversity and supplemental jurisdiction.  While Rule 501

of the Federal Rules of Evidence requires the application of

federal privilege law to federal-question claims and state

privilege law to state-law claims, <u>Bondi v. Grant Thornton Int'l</u>,

04 Civ. 9971 (LAK), 2006 WL 1817313 at *2 (S.D.N.Y. June 30,

2006), <u>aff'd</u>, 04 Civ. 9971 (LAK), 2006 WL 2668367 (S.D.N.Y. Sept.

14, 2006), <u>citing</u> <u>Bank Brussels Lambert v. Credit Lyonnais</u>

<u>(Suisse) S.A.</u>, 160 F.R.D. 437, 441 (S.D.N.Y. 1995) <u>and</u> <u>G-I</u>

<u>Holdings, Inc. v. Baron & Budd</u>, 01 Civ. 0216 (RWS), 2005 WL

1653623 (S.D.N.Y. July 13, 2005), the Federal Rules of Evidence

do not specify which law is to be applied where a proceeding

includes claims based on both federal and state law.  <u>See</u> <u>Jaffee</u>

<u>v. Redmond</u>, 518 U.S. 1, 15 n.15 (1996) (noting "disagreement

concerning the proper rule in cases [where] relevant evidence

would be privileged under state law but not under federal law");

3 Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's Federal</u>

<u>Evidence</u> § 501.02[2][c] (Joseph M. McLaughlin ed., 2d ed. 2006)

("Rule 501 is not clear on which rule should be followed" where

state and federal law claims are raised in same action).  Never-

theless, the law is clear in this Circuit that federal privilege

law should be applied to evidence relevant to both federal and

state law claims.  <u>See</u> <u>von Bulow v. von Bulow</u>, 811 F.2d 136, 141

(2d Cir. 1987); <u>Bayne v. Provost</u>, 359 F. Supp.2d 234, 238-39

(N.D.N.Y. 2005); <u>Boss Mfg. Co. v. Hugo Boss AG</u>, 97 Civ. 8495

(SHS)(MHD), 1999 WL 47324 at *1 (S.D.N.Y. Feb. 1, 1999).  Here, because the Document is relevant to both plaintiff's federal and state law claims, I conclude that the present motion is governed by principles of federal law.

>    2.   Applicability of the
>         Attorney-Client Privilege

The elements of the attorney-client privilege are well settled:

> "The [attorney-client] privilege applies only if (1)
> the asserted holder of the privilege is or sought to
> become a client; (2) the person to whom communication
> was made (a) is a member of the bar of a court, or his
> subordinate and (b) in connection with this communica-
> tion is acting as a lawyer; (3) the communication
> relates to a fact of which the attorney was informed
> (a) by his client (b) without the presence of strangers
> (c) for the purpose of securing primarily either (i) an
> opinion on law or (ii) legal services or (iii) assis-
> tance in some legal proceeding, and not (d) for the
> purpose of committing a crime or tort; and (4) the
> privilege has been (a) claimed and (b) not waived by
> the client."

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., supra, 160 F.R.D. at 441, quoting United States v. United Shoe Mach. Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950); see United States v. Davis, 131 F.R.D. 391, 398 (S.D.N.Y. 1990).

The privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383,

390 (1981).  Therefore, "[i]t is now [also] well established that the privilege attaches not only to communications by the client to the attorney, but also to advice rendered by the attorney to the client, at least to the extent that such advice may reflect confidential information conveyed by the client."  Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., supra, 160 F.R.D. at 441-42; see e.g. In re Six Grand Jury Witnesses, 979 F.2d 939, 944 (2d Cir. 1992) ("T]he privilege extends to communications between a lawyer and his or her client-both information provided to the lawyer by the client and professional advice given by an attorney that discloses such information."); In re Grand Jury Subpoenas Dated March 24, 2003, 265 F. Supp.2d 321, 324 n.16 (S.D.N.Y. 2003) (collecting cases); Nat'l Broad. Co. v. United States Small Bus. Admin., 836 F. Supp. 121, 125 (S.D.N.Y. 1993) ("[T]he attorney-client privilege includes not only information provided by a client to a lawyer, but also professional advice given by an attorney that discloses such information." (internal quotation marks omitted)); Martin v. Valley Nat'l Bank, 140 F.R.D. 291, 304 (S.D.N.Y. 1991) ("[C]ourts appear to concur that the protection [of the attorney-client privilege] should also extend to legal advice rendered by the attorney, at least if it might reflect or reveal the client's confidential communica-tions.); O'Brien v. Board of Educ., 86 F.R.D. 548, 549 (S.D.N.Y.

12

1980); <u>SCM Corp. v. Xerox Corp.</u>, 70 F.R.D. 508, 520-22 (D. Conn. 1976).

"'[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship.'" <u>von Bulow v. von Bulow</u>, <u>supra</u>, 811 F.2d at 144, <u>quoting In re Grand Jury Subpoena Dated Jan. 4, 1984</u>, 750 F.2d 223, 224 (2d Cir. 1984). Thus, the party seeking to invoke the privilege must establish all elements of the privilege. <u>Bowne of New York City, Inc. v. AmBase Corp.</u>, 150 F.R.D. 465, 470 (S.D.N.Y. 1993) (collecting cases).

Construing the privilege narrowly, <u>In re County of Erie</u>, 473 F.3d 413, 418 (2d Cir. 2007), I conclude, after conducting an <u>in camera</u> review, that the Document is not protected by the attorney-client privilege because it does not reveal any of the client's -- BOA's -- confidential communications with its counsel.

Here, the Document contains only generic descriptions of the law as it might apply to the securities industry, such as generalized references to "What Courts Have Said" and a general explanation of the "due diligence defense" to some claims of securities fraud and misrepresentation (<u>See</u> <u>e.g</u>. The Document at 11, 14-16). The Document does not, however, apply any of these generalized legal principles to specific factual situations nor does it indirectly disclose any inquiry by or concern of BOA that

13

would not be self evident from the nature of BOA's business.
Although the Document outlines BOA's general due diligence
policies, the Document contains only highly generalized guide-
lines such as when certain legal and banking professionals should
be consulted concerning a transaction, that public documents and
investment banking files should be reviewed, and that documents
should not be destroyed in contemplation of litigation.   The
Document contains no specific factual information concerning how
BOA in actuality has conducted or does conduct due diligence, and
does not disclose or reflect any confidential information dis-
closed by BOA.   Indeed, BOA does not cite any information con-
tained in the Document which either directly, or indirectly,
reveals any client confidences.   Accordingly, I conclude that BOA
has not satisfied its burden of establishing that the Document is
protected by the attorney-client privilege.[3]

          This conclusion is supported by the opinions of other
courts that have reached similar conclusions when presented with
comparable facts.   For example, in In re Sulfuric Acid Antitrust
Litigation, 235 F.R.D. 407, 430-31 (N.D. Ill.), supplemented by
In re Sulfuric Acid Antitrust Litigation, 432 F. Supp.2d 794

---

[3]My finding that the Document is not protected by the
attorney-client privilege in the first instance obviates the need
to address the other arguments made by the parties in connection
with this motion because all such arguments either address or are
predicated on the Document being protected by the privilege.

14

(N.D. Ill. 2006), the United States District Court, Northern District of Illinois ruled that antitrust compliance manuals which were distributed to certain employees were not protected by the attorney-client privilege.  Like the Document, the manuals at issue in that case were drafted by legal counsel to assist employees in complying with relevant laws and contained information analogous to that contained in the Document, albeit concerning a different body of substantive law.  The Court found that the manuals were not protected by the attorney-client privilege because "no advice [was] reflected, no confidential confidences [were] revealed," In re Sulfuric Acid Antitrust Litigation, supra, 235 F.R.D. at 431, and because the manuals did not describe any historical factual situations faced by the client and were "not a specific response to legal advice being sought, but a prompting to seek advice when certain situations ar[o]se[,]" In re Sulfuric Acid Antitrust Litigation, supra, 432 F. Supp.2d at 797-98.

        Similarly, in United States v. Silverman, 430 F.2d 106, 121-22 (2d Cir. 1970), the Second Circuit held that a section of a report from an attorney to its client which described the client's "minute books" at the time they were presented to the attorney was not protected by the attorney-client privilege because the "[t]he communication made by the client in delivering the minutes to its attorney was not a confidential communication

15

of the contents of the minutes since those minutes [were] public records." Like the communication at issue in Silverman, the Document does not disclose client confidences because it reveals nothing more than BOA's self evident interest avoiding liability through general compliance with securities laws applicable to its industry. See also, in United States v. Int'l Bus. Mach., 66 F.R.D. 206, 212 (S.D.N.Y. 1974) (documents containing lawyer-client communications which did not reveal confidential client information not protected by the attorney-client privilege).

IV.  Conclusion

          Accordingly, for all the foregoing reasons, I conclude that the Document is not protected by the attorney-client privilege. BOA's motion for an Order declaring that the Document is protected by the attorney-client privilege and to compel Hartford to destroy all copies of the Document in its possession, cease making use of the Document, and withdraw the Brokaw Report is, therefore, denied.

Dated:  New York, New York
          August 21, 2007

                                        SO ORDERED

                                        HENRY PITMAN
                                        United States Magistrate Judge

16

Copies mailed to:

John H. Cobb, Esq.
Helms Mullis & Wicker, PLLC
201 North Tryon Street
Charlotte, North Carolina 28202
P.O. Box 31247 (28231)

Michael P. Bowen, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019-6799